**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)   *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMIE KELLY,** | : | Civil Action No. |
| **303 Russell Street** | : | |
| **Ridley Park, PA 19078** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **HORIZON HOUSE, INC.,** | : | |
| **5901 Market Street, 3rd Floor** | : | |
| **Philadelphia, PA 19139** | : | |
| Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Jamie Kelly (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Horizon House, Inc. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").  In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Horizon House, Inc. is a provider of residential treatment

services with a location and corporate headquarters located at 5901 Market Street, 3rd Floor, Philadelphia, PA 19139.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## **JURISDICTION AND VENUE**

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII, the ADA and the PHRA.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race and disability discrimination and retaliation against Defendant.

14. The Complaint was assigned a Charge Number 530-2022-02936 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated August 8, 2022. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is a Caucasian female.

21. In July 2019, Defendant hired Plaintiff in the position of Quality Improvement Director.

22. Plaintiff was well qualified for her position and performed well.

23. Throughout Plaintiff's employment, she noticed that Caucasian employees, including, herself, were treated differently than African American employees by Karlene Ricketts (Jamaican/black), Corporate Quality Improvement and Compliance Director, Linda Washington-Brown (African American), Chief Services Officer of Developmental Services, Martina Woodard (African American), Regional Director, and Renee McNeil (African American), Service Coordination Director.

24. This disparate treatment included, but was not limited to, micromanagement, being spoken to in a rude and condescending manner, extremely long in-person supervision sessions, and a clear attempt to find errors in work product or to shift blame on to Caucasian employees.

25. In addition, African American Regional Directors openly mocked Plaintiff and her Caucasian coworkers in meetings, but it was never addressed.

26. This discriminatory conduct was so egregious, that Program Directors, including, but not limited to, Delphine "Brenee" Brown (African American) and Nellie Manier (African American), complained to management about how Plaintiff was spoken to in a disrespectful manner.

27. However, the racially disparate treatment did not change.

28. After being singled out in Administrative Team meetings led by Ms. Washington-Brown, Plaintiff informed Ms. Ricketts that she had been reminded that she was "the only white person in the room".

29. Plaintiff also complained to Ms. Ricketts that Ms. Washington-Brown treated Khaleedah Miller (African American), QI Manager, Ms. McNeil, and Ms. Woodard better than Plaintiff and her other Caucasian coworkers because of race.

30. Plaintiff verbally complained to Ms. Ricketts of the racially discriminatory treatment, but she did not address her complaints.

31. Plaintiff did not file an official complaint because she feared retaliation and needed her job.

32. However, Ms. Washington-Brown and Ms. Ricketts continued a campaign to sabotage Plaintiff's work product in order to make it appear that she was not timely completing her work product.

33. This was done by delaying the review of Plaintiff's work product, so that she could not complete her projects.

34. By way of example, Ms. Ricketts and Ms. Washington-Brown would demand that Plaintiff completed a project due to it being needed immediately, but then would delay implementation of the project.

35. This was then blamed on Plaintiff, when it was completely out of her control as she had completed her job duties.

36. Defendant effectively set Plaintiff up for failure by doing this.

37. In or around early June 2021, Plaintiff informed Laverne Pearsall, Human Resource Manager, of her panic attacks and Idiopathic Urticaria.

38. Ms. Pearsall directed Plaintiff to apply for a medical leave of absence if she medically required it.

39. On June 7, 2021, Plaintiff was examined by Dr. Peter Nonack, Primary Care Physician, who placed Plaintiff on a medical leave of absence due to her disabilities until August 11, 2021.

40. On August 12, 2021, Plaintiff returned to work.

41. Shortly after Plaintiff returned to work, she noticed that neither Ms. Ricketts nor Ms. Washington-Brown held Plaintiff's coworkers accountable for their work product, which greatly increased Plaintiff's workload as a result.

42. Specifically, most of the work involved Larry Wenger (Caucasian), Training Manager, who Ms. Ricketts refused to have regular communication with during Plaintiff's medical leave of absence.

43. Ms. Ricketts and Ms. Washington-Brown had not reviewed the projects Plaintiff had completed before her medical leave of absence, nor was there any work performed on the projects that Plaintiff had started upon their insistence.

44. In addition, neither Ms. Ricketts nor Ms. Washington-Brown reviewed and implemented policies Plaintiff created before going out on her medical leave of absence.

45. Ms. Washington-Brown continued her practice of having Ms. Ricketts send Plaintiff emails questioning her work product in an attempt to find an error in her work or an assignment that she had not addressed.

46. Ms. Ricketts and Ms. Washington-Brown delayed reviewing Plaintiff's work product, so that she could not finish projects.

47. In addition, Ms. Ricketts falsely accused Plaintiff of being condescending when she spoke to her coworkers.

48. Plaintiff asked her coworkers if they found her to speak in a condescending manner, and they all vehemently denied it.

49. In early November 2021, Plaintiff called Jeffrey Wilush's (Caucasian), CEO, Administrative Assistant to schedule an appointment with him in order to complain about Ms. Ricketts' and Ms. Washington-Brown's discriminatory and retaliatory conduct.

50. Mr. Wilush's Administrative Assistant scheduled an appointment with Plaintiff to speak with him.

51. However, the Administrative Assistant placed Plaintiff's meeting with Mr. Wilush on Plaintiff's "shared" calendar.  Ms. Rickets and Ms. Washington-Brown are two (2) of the people with whom the calendar was automatically shared.

52. There was no business reason for Plaintiff to solely meet with Mr. Wilush.

53. It is clear that Ms. Ricketts and Ms. Washington-Brown were aware that the reason why Plaintiff was scheduled to meet with Mr. Wilush was to complain about discrimination.

54. The morning of Plaintiff's meeting with Mr. Wilush, his Administrative Assistant informed Plaintiff that their meeting was cancelled, and she rescheduled it for November 9, 2021.

55. On November 8, 2021, Ms. Rickets, Ms. Washington-Brown and Quanda Stewart, Human Resource Director, terminated Plaintiff for allegedly being too difficult to work with and to get work from Plaintiff.

56. Defendant had not issued Plaintiff any disciplines or placed her on a Performance Improvement Plan ("PIP").

57. On November 9 and 10, 2021, Plaintiff spoke to Mr. Wilush regarding the discrimination and retaliation that she was subjected to by Defendant and the false allegations cited as the reason for her termination.

58. Mr. Wilush informed Plaintiff that he would consider Plaintiff's complaints a grievance and that he would investigate the situation.

59. In addition, Mr. Wilush notified Plaintiff that if she contacted an attorney, he would cease the grievance process.

60. Mr. Wilush advised Plaintiff that he would get back to her regarding his investigation approximately one (1) week later.

61. However, Mr. Wilush never contacted Plaintiff regarding his alleged investigation.

62. On November 13, 2021, Plaintiff received her termination letter dated November 8, 2021.

63. The termination letter listed a multitude of false allegations throughout it.

64. Throughout Plaintiff's employment multiple Caucasian Directors, including, but did not limited to, Lizanne Welding Mills, Program Director, Michael Tucker, Program Director, and Elizabeth Johnson, Clinical Director, terminated their employment with Defendant due to the discriminatory treatment they were subjected to.

65. In fact, all of Defendant's Caucasian administrative and management staff in the division ended up resigning after a relatively short tenure.

66. It is Plaintiff's position that she was discriminated against due to her race and disability and retaliated against for requesting a reasonable accommodation and for attempting to complain about discrimination in violation of Title VII, the ADA and the PHRA.

## COUNT I – RACE DISCRIMINATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

67. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

68. Plaintiff is a member of protected classes in that she is Caucasian.

69. Plaintiff was qualified to perform the job for which she was hired.

70. Plaintiff suffered adverse job actions, including, but not limited to termination.

71. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

72. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

73. Defendants discriminated against Plaintiff on the basis of race.

74. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

75. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – RACE DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

76. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

77. The foregoing conduct by Defendants constitutes unlawful discrimination against Plaintiff on the basis of her race (Caucasian).

78. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISABILITY DISCRIMINATION
## <u>AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED</u>

79. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

80. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

81. Plaintiff was qualified to perform the job.

82. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

83. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

84. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

85. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

86. The purported reason for Defendant's decision is pretextual.

87. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

88. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

89. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

90. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

91. Plaintiff was qualified to perform the job.

92. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

93. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

94. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

95. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

96. The purported reason for Defendant's decision is pretextual.

97. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

98. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

99. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

100. Plaintiff engaged in activity protected by Title VII when she attempted to report race discrimination.

101. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

102. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VI – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

103. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

104. Plaintiff engaged in activity protected by ADA when she requested a reasonable accommodation and attempted to report disability discrimination/retaliation.

105. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

106. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

107. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

108. Plaintiff engaged in activity protected by the PHRA when she requested a reasonable accommodation and attempted to report race discrimination and disability discrimination/retaliation.

109. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

110. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Jamie Kelly, requests that the Court grant her the following relief against Defendants:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII, the ADA and the PHRA.

(j) Order Defendants to institute and implement, and for its employees, to attend and/or

otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: November 4, 2022          **By:**     */s/ David M. Koller*
David M. Koller, Esquire (90119)
Jordan D. Santo, Esquire (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*